## BAYLOR UNIVERSITY v. OGILVIE et al.
### No. 11911.

Court of Civil Appeals of Texas.
San Antonio.
March 23, 1949.

Rehearing Denied May 4, 1949.

Green & Rosson, San Antonio, for appellant.

J. B. Lewright, San Antonio, Martin J. Arnold, San Antonio, for appellees.

NORVELL, Justice.

The appellant, Baylor University, attacks an order authorizing and directing Joe S. Sheldon, temporary administrator of the estate of Henry Houston Ogilvie, deceased, to advance and pay to Mrs. Raymond Briggs Ogilvie, the widow of the deceased, the sum of $600.00 per month during the pendency of certain litigation pending in the county and district courts of Bexar County, Texas. The order was originally entered by the probate court and sustained in the district court, and provides that such monthly advancements are to be charged to Mrs. Oglivie's account in the final settlement and distribution of the estate.

The temporary administrator was appointed in accordance with the provisions of Article 3378, Vernon's Ann.Civ.Stats., which reads as follows:

"Pending a contest relative to the probate of a will, for the granting of the letters of administration, the county judge may appoint a temporary administrator, with such limited powers as the circumstances of the case may require; and such appointment may continue in force until the termination of the contest and the appointment of an executor or administrator with full powers."

Mrs. Raymond Briggs Ogilvie has asserted the invalidity of the last will and testa-

ment of her deceased husband, and upon her application the assets of the estate were removed from the control of the executor and testamentary trustee named in the will and placed in the hands of the temporary administrator.

It is the contention of Baylor University that the order allowing Mrs. Ogilvie the sum of $600.00 per month is unauthorized in that it does not have for its purpose the preservation and conservation of the estate until the will contest can be decided, but, on the contrary, effects a partial distribution of the estate, which is wholly unauthorized by statute.

Appellee does not cite an authority which, in our opinion, authorizes the entry of an order such as the one here under attack. Her primary position seems to be that Baylor University can not complain of the order because it failed to show that it would suffer loss or damage by reason thereof.

In passing upon this contention we must consider some of the provisions of Dr. Ogilvie's will and the trust agreement referred to therein, as well as certain events which took place after the execution of said will.

On the 18th day of June, 1938, Dr. Henry Houston Ogilvie and his wife, Mrs. Raymond Briggs Ogilvie, made a joint and mutual will in which it was provided that should Dr. Ogilvie die before his wife all of his property and the community property belonging to him and his wife should go to the Alamo National Bank of San Antonio, as trustee for the uses and upon the terms and conditions specified in the will. It was provided that any trust estate arising under the will should be added to the trust estate created by a life insurance trust agreement also dated June 18, 1938, entered into by Dr. Ogilvie and the Alamo National Bank as trustee, and should be administered and distributed in accordance with the terms of said life insurance trust agreement. In accordance with the trust agreement mentioned in the will, Dr. Ogilvie delivered to the Alamo National Bank as trustee, a number of life insurance policies and authorized the trustee to receive the proceeds therefrom upon Dr. Ogilvie's death and hold the same in trust

with full power and authority of investment and reinvestment. It was further provided that after paying the expenses incurred in the management of the trust estate, the trustee should pay certain stated sums of money to various individuals per month. The trust instrument provided that the trustee should pay to Mrs. Raymond Briggs Ogilvie the sum of $300.00 per month for the balance of her lifetime, subject, however, to the provisions of paragraph XIII of the agreement, which reads as follows:

"Grantor (Dr. Ogilvie) agrees and directs that in the event of need occasioned by sickness, misfortune or other causes, including drastic changes in the monetary cost of living *of which need the Trustee should be the sole judge,* the Trustee is authorized to increase, either temporarily, or permanently the monthly payments hereinabove provided for my said wife and my said daughter, or my daughter's children." (Italics supplied.)

Dr. Ogilvie died on June 15, 1945, and his will was admitted to probate on July 3, 1945. Virginia Ogilvie, the only daughter of Dr. and Mrs. Ogilvie, died intestate and without issue on July 22, 1946.

The trust agreement provided that in the event the daughter died before distribution of the trust estate and left no children surviving her, the undistributed remainder of the trust estate should go to the Board of Trustees of Baylor University, for the following uses and purposes:

"To establish, maintain and administer a fund to be known as 'Virginia Graves Ogilvie Student Loan Fund' and to use such funds for the making of loans to deserving students of Baylor University, to the end that worthy and capable students of Baylor University, who could not otherwise do so may be entitled to continue their studies at Baylor University."

This contingent bequest to Baylor University was made subject to all monthly payments and legacies provided for in the trust agreement. However, the trustee was authorized to purchase annuities for the beneficiaries of such monthly payments and legacies, or to set aside such portion of the trust estate as it deemed sufficient to insure the continuation of such pay-

ments and distribute the balance thereof to the Trustees of Baylor University forthwith.

After the will had been admitted to probate, the Alamo National Bank took charge of the estate and proceeded with the administration thereof under the provisions of the trust agreement referred to and made a part of the will. The bank paid to Mrs. Ogilvie the sum of $300.00 per month until February, 1946, at which time the amount payable monthly was increased to $600.00 by the trustee, acting under the provisions of paragraph XIII of the trust agreement.

It seems that some time prior to January of 1947, Mrs. Ogilvie made known her intention of contesting the validity of her husband's will. Thereupon, the Alamo National Bank, as executor and trustee, filed a suit in which both Mrs. Ogilvie and Baylor University were made parties. The bank sought a declaratory judgment determining the rights of the parties under the will and trust agreement. Mrs. Ogilvie answered the petition and by cross-action sought to have the will set aside, and, in the alternative, declared her election to take a one-half community interest in the estate. Baylor University replied to Mrs. Ogilvie's claim of election by asserting that she had accepted benefits under the will and trust agreement and could not now refuse to recognize and accept under the joint and mutual will.

■ At the time the order was made directing and empowering the temporary administrator to pay Mrs. Ogilvie the sum of $600.00 per month there were two issues raised in legal proceedings which were undetermined, i. e., the question of the validity of the will and the trust agreement, and the question of Mrs. Ogilvie's right to elect to take a one-half community interest in the estate. If one or both of Mrs. Ogilvie's contentions as to these issues be accepted as correct, it might be conceded that no damage would result to Baylor University by reason of the payment of $600.00 per month to her by the temporary administrator. On the other hand, if it be assumed that the contentions of Baylor University are correct, and that the will and trust agreement are valid and that Mrs. Ogilvie has made

an irrevocable election to take under the will, it is apparent that the interests of Baylor University are affected by the order, at least insofar as the payment of an additional $300.00 per month to Mrs. Ogilvie is concerned. We therefore conclude that Baylor University, which now occupies the position of residuary legatee and devisee under Dr. Ogilvie's will, has such an interest in the subject matter of the estate as authorizes it to question the legality of the order which it here attacks.

■■ We next consider the question of the validity of the order. It is inferentially argued that inasmuch as the Alamo National Bank, as independent executor or trustee, has increased the monthly amount payable to Mrs. Ogilvie from $300.00 to $600.-00, the temporary administrator should, in effect, continue this allowance. As above pointed out, the trustee under paragraph XIII of the trust agreement is made the "sole judge" of the necessity of increasing the monthly payments to Mrs. Ogilvie. Cocke v. Smith, 142 Tex. 396, 179 S.W.2d 954; Hutcherson v. Hutcherson, Tex.Civ. App., 135 S.W.2d 757, wr. ref. The temporary administrator is in no sense a successor to the trustee, but is the representative of the probate court. In delegating authority to its representative, the court is governed by statutory provisions rather than by the terms of the disputed will.

■ We are in accord with appellant's contention that the statutes do not authorize a temporary administrator, appointed under the provisions of Article 3378, to make a partial distribution of the estate. This, for the reason that until the will contest has been disposed of, the persons or institutions entitled to the estate can not be ascertained. Van Grinderbeck v. Lewis, Tex.Civ.App., 204 S.W. 1042, 1046. An order directing delivery of the assets of the estate to a litigant by way of distribution prior to the determination of that person's right to share in the estate would obviously be improper. By the use of such orders during the course of temporary administration, the property of an estate could be delivered over to a litigant, although it might be thereafter determined that such recipient had no interest therein.

Article 3378 is a part of Chapter 7, Title 54, Vernon's Ann.Civ.Stats., relating to "Temporary Administration." The position of a temporary administrator appointed under said Article 3378, is that of a conservator and not a distributor of the estate. "His authority does not * * * extend to the payment of legacies or making distribution of the estate." 34 C.J.S., Executors and Administrators, § 1040, page 1315. See also Ware v. Barfiedl, Tex.Civ. App., 54 S.W.2d 1105; Cruse v. O'Gwin, 48 Tex.Civ.App. 48, 106 S.W. 757, 13 Tex. Jur. 713, § 134, 21 Am.Jur. 833, § 813, Annotation, 148 A.L.R. 275.

If there be statutory authority for an order such as the one here under attack, it must be found in those provisions relating to allowances permitted prior to distribution. It has been held that it is the duty of a temporary administrator to set aside to the widow her allowances under the provisions of Chapter 16, Title 54, Articles 3476–3484, Vernon's Ann.Civ.Stats. Moyers v. Carter, Tex.Civ.App., 61 S.W.2d 1027, wr. ref. However, the order here questioned is not based upon the statutory provisions cited. No attempt is made to estimate the amount which would be required to maintain the widow for one year from the date of the husband's death. In fact, more than one year had long since passed prior to the time the order complained of was entered. The provisions of Articles 3476–3484 are rendered further inapplicable by reason of the dispute over Mrs. Ogilvie's alleged binding election to take under the will. Nelson v. Lyster, Tex. Civ.App., 74 S.W. 54.

Appellee has cited no statutory provision which would support the disputed order as an allowance. We have also been unable to find a statutory basis therefor. We therefore conclude that the order is one which in effect provides for a partial distribution of the estate and is consequently unauthorized.

Our probate system is largely statutory and if an allowance is to be permitted under the circumstances disclosed by the record before us, it must be provided for by legislative action.

For the reasons stated, we hold that the order appealed from should be vacated. This cause is remanded to the district court with directions to enter a proper order in keeping with this holding and certify the same to the Clerk of the County Court in accordance with the provisions of Rule 335, T.R.C.P.